**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**Carlota FREEMEN, Intervenor Plaintiff,**

v.

**Whirlpool Corporation, Defendant.**

**No. 3:06–0593.**

United States District Court, M.D. Tennessee, Nashville Division.

June 16, 2009.

Deidre Smith, Faye A. Williams, Steven W. Dills, Equal Employment Opportunity Commission, Memphis, TN, Sally Ramsey, Equal Employment Opportunity Commission, Nashville, TN, for Plaintiff.

Siew–Ling Shea, Rogers & Associates, Helen Sfikas Rogers, Nashville, TN, Andy L. Allman, Kelly, Kelly & Allman, Hendersonville, TN, for Intervenor Plaintiff.

Adam Carl Wit, Asilia S. Backus, David Christlieb, Keith C. Hult, Littler, Mendelson, P.C., Chicago, IL, Timothy K. Garrett, Bass, Berry & Sims, Nashville, TN, for Defendant.

## *ORDER*

JOHN T. NIXON, Senior District Judge.

Pending before the Court are Defendant Whirlpool Corporation's Motion to Strike Certain Materials, Evidence, and Testimony ("Defendant's Motion to Strike Other Evidence") (Doc. No. 183) and Defendant's Motion to Strike the Report, Opinion, and Testimony of Dr. Mark Cohen ("Defendant's Motion to Strike Expert Testimony") (Doc. No. 182). For the reasons dis-

cussed below, the Court **DENIES** both Defendant's Motion to Strike Other Evidence and Defendant's Motion to Strike Expert Testimony.

## I. BACKGROUND

This is a Title VII action alleging sexual and racial hostile work place harassment.[1] Plaintiff Equal Employment Opportunity Commission ("EEOC") and Intervenor Plaintiff Carlota Freemen ("Freemen") (collectively, "Plaintiffs") allege that Willie Baker ("Baker"), Freemen's co-worker, sexually and racially harassed Freemen at Defendant Whirlpool Corporation for a period of two to three months, culminating in a physical assault on Freemen. Plaintiffs claim that Freemen developed post traumatic stress disorder ("PTSD") as a result of the harassment and attack, and that her PTSD is chronic, and has destroyed her career and personal life. Plaintiffs further allege that Defendant was aware of Baker's conduct toward Freemen because Freemen and others made repeated complaints to Freemen's supervisor, Charlie Fisher ("Fisher"). Plaintiffs allege that Fisher took no remedial action. In response, Defendant claims that there is no evidence of any sexual or racial harassment, and furthermore no evidence that Defendant was aware of any such harassment. Plaintiffs seek lost pay damages in the form of front pay and back pay, future medical costs, lost benefits, and punitive damages. Plaintiffs presented evidence on the issue of future damages through the Report and testimony of economics expert Dr. Mark Cohen ("Dr. Cohen").

Trial in this case was pending when the parties agreed to substitute Freemen's deposition in this case for live testimony at trial, provided that the matter would proceed as a bench trial. (Doc. No. 160). At that time, numerous Motions in Limine were pending. Upon the parties agreement to a bench trial, the Court deferred ruling on all pending Motions in Limine (Doc. Nos. 97, 98, 107–12, 116, 131, 134, and 147). (Doc. No. 161). The Court permitted the parties to develop a record and instructed them to raise any issues regarding the admissibility of evidence after trial in the form of motions to strike.

Plaintiffs have not renewed any pretrial evidentiary arguments. Defendant renews certain arguments in its Motion to Strike Certain Evidence, and requests that the Court strike Dr. Cohen's report and testimony for the first time in Defendant's Motion to Strike Expert Testimony. The Court addresses each of Defendant's Motions in turn.

## II. ANALYSIS

### A. *Defendant's Motion to Strike Certain Evidence*

#### 1. *Lost Pay Damages*

■ Defendant argues that Plaintiffs' claims for lost pay damages should be dismissed under the authority of *Lulaj v. Wackenhut,* 512 F.3d 760 (6th Cir.2008), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Defendant also asks the Court to strike the report and testimony of Plaintiffs' economics expert, Dr. Cohen, on the basis that such evidence is pertinent only to the issue of lost pay damages. Because the Court finds that *Lulaj* does not bar Plaintiffs' claims for lost pay damages, the Court does not here address Defendant's argument with respect to Plaintiffs' economics expert.

■ In *Lulaj,* the Sixth Circuit held that a Title VII plaintiff must establish

---

1. Facts in this Section are taken from testimony presented at trial and are uncontested unless otherwise noted.

either actual termination or constructive discharge to be eligible for an award of lost pay damages, whether front pay or back pay. 512 F.3d at 767. The evidence is undisputed in this case that Freemen resigned. (Freemen Dep. 234:2–4, 11–13). Accordingly, under *Lulaj*, Plaintiffs must prove constructive discharge to succeed on their claims for front and/or back pay. Defendants allege, however, that Plaintiffs failed to plead constructive discharge in accordance with Federal Rule of Civil Procedure 8(a)(2) and the notice pleading requirement of *Twombly*. On this basis, Defendants argue that Plaintiffs are barred from submitting evidence of constructive discharge and therefore cannot prevail on their claims for lost pay damages.

■ Neither of Plaintiffs' respective Complaints (Doc. Nos. 1, 9) contain a specific allegation of "constructive discharge." The Supreme Court has held, however, that the absence of the words "constructive discharge" within the four corners of a complaint is not necessarily fatal to a constructive discharge claim. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 139 n. 5, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). The question is whether, under the liberal notice pleading standard, a claim of constructive discharge is plain from the facts alleged. *Id.; see, e.g., Fitzgerald v. Henderson*, 251 F.3d 345, 367 (2d Cir. 2001); *Hale v. Hawaii Publications, Inc.*, 468 F.Supp.2d 1210, 1224 (D.Hawai'i 2006); *Traylor v. GTE North, Inc.*, 2005 WL 3210613, at *2 (N.D.Ind. April 13, 2005); *Munroe v. Compaq Computer Corp.*, 229 F.Supp.2d 52, 62 (D.N.H.2002); *Rosario v. National Housing Partnership Property Management, Inc.*, 1998 WL 146207, at *2 n. 4 (S.D.N.Y. Mar. 26 1998).

■ Plaintiff must meet a two-prong test to establish constructive discharge. *Yates v. Avco Corp.*, 819 F.2d 630, 636–37 (6th Cir.1987). First plaintiff must show that a reasonable person in the plaintiff's position would have felt compelled to resign. Next, plaintiff must prove that the defendant employer either intended to cause or should reasonably have foreseen plaintiff's resignation in light of defendant's conduct. *Id.*, at 637. As a result, the issue before the Court is whether Plaintiffs' respective Complaints contained factual allegations sufficient to support a finding of constructive discharge under the *Yates* two-pronged standard.

In pertinent part, Plaintiff EEOC's Complaint alleged:

8. In January, 2004, Carlota Freemen was recalled to work from layoff by Defendant Employer and assigned to a work station near the work station of Willie Baker. Ms. Freemen and Mr. Baker did not know each other prior to this.

9. From the first week that she returned to work, Ms. Freemen was subjected to continuing harassment by Mr. Baker because of her sex and race. Ms. Freemen reported this harassment to her supervisor on many occasions, but Defendant failed to stop Mr. Baker's harassing conduct. The harassing conduct and Defendant's failure to take appropriate actions to stop it caused Ms. Freemen to suffer great emotional distress and adversely affected her working conditions.

10. On or about March 26, 2004, Mr. Baker, without any provocation from Ms. Freemen, struck Ms. Freemen in the face and knocked her down, then continued to pummel her when she was on the ground. Co-workers managed to extricate Ms. Freemen from Mr. Baker's grasp and separate them. Ms. Freemen suffered serious injuries due to this assault.

11. Ms. Freemen suffered serious physical and emotional injuries due to the assault by Mr. Baker. Ms. Freemen has been diagnosed with post-traumatic stress disorder caused by the assault and has been unable to return to employment.

(Doc. No. 1 at ¶¶ 8–11). Similarly, Intervening Plaintiff Freemen's Complaint alleged:

6. In January 2004, Carlota Freemen was recalled to work from layoff by Defendant Whirlpool and assigned to a workstation near the workstation of Willie Baker. Ms. Freemen and Mr. Baker did not know each other prior to this.

7. From the first week that she returned to work, Ms. Freemen was subjected to continuing harassment by Mr. Baker because of her sex and race. Ms. Freemen reported this harassment to her supervisor on many occasions, but Defendant failed to stop Mr. Baker's harassing conduct. The harassing conduct and Defendant's failure to take reasonable and appropriate actions to stop it caused Ms. Freemen to suffer great emotional distress and adversely affected her working conditions. In fact, Ms. Freemen's supervisor was so callous that on one occasion when she told her supervisor, Mr. Fisher, about the sexually explicit statements that Mr. Baker was making to her that maybe she should just go ahead and "f—k him and just get it over with."

8. On or about March 26, 2004, Mr. Baker without any provocation from Ms. Freemen, struck Ms. Freemen in the face and knocked her down, then continued to pummel her when she was on the ground. Co-workers managed to extricate Ms. Freemen from Mr. Baker's grasp and sepa-

rate them. Ms. Freemen suffered serious injuries due to this assault and feared for her life both during the assault and afterward based on Mr. Baker's threats to kill her.

9. Ms. Freemen suffered serious physical and emotion [sic] injuries due to the assault by Mr. Baker. Ms. Freemen has been diagnosed with post-traumatic stress disorder caused by the assault and has been unable to return to employment. Ms. Freemen's great emotional distress has caused her to seek care from mental health care providers, which she has needed in the past and will continue to need in the future. Ms. Freemen's emotional distress and depression also resulted in the demise of her long-term and previously happy marriage.

(Doc. No. 1 at ¶¶ 6–9).

Defendant argues that the sum of Plaintiffs' respective Complaints is the "vague assertion that Freemen had been 'unable to return to work,'" an assertion which, Defendant argues, failed to provide notice of a claim for constructive discharge (Doc. No. 184 at 59).

The Court disagrees. Both Complaints contain factual allegations that (1) Freemen was subjected to persistent racial and sexual harassment by Willie Baker ("Baker"), a co-worker; (2) Freemen repeatedly reported incidents of harassment to Defendant, but Defendant responded with callous indifference; (3) Baker's harassment escalated to an instance of physical assault, as a result of which (4) Freemen suffered severe psychological trauma that (5) rendered her unable to return to work.

The Court finds that, if proven, these facts could support a claim of constructive discharge. Plaintiffs' have alleged facts that meet the two-prong *Yates* test. With respect to the first prong—that a reason-

able person in the plaintiff's position would feel compelled to resign—, Plaintiffs claimed that, as a result of Defendant's failure to deal with Baker's sexual and racial harassment of Freemen, Freemen suffered a psychological breakdown that has rendered her unable to work. *See Fitzgerald v. Henderson*, 251 F.3d 345, 367 (2d Cir.2001) (finding constructive discharge adequately plead "although the specific phrase 'constructive discharge' was not used" where, among other factual allegations, "the pleading asserted that ... abuse so persisted and escalated that it essentially brought on a psychological breakdown, causing [plaintiff] to became [*sic*] unable to work at all"); *Leland v. U.S. National Ass'n*, 1999 WL 778569, at *10 (D.Or. Sept. 23, 1999) (holding that constructive discharge may be supported by facts showing that harassment induced a psychological breakdown that made future employment impossible); *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1109–10 (S.D.Ga.1995) (same).

With respect to the second *Yates* prong—that Defendant should reasonably have foreseen Freemen's resignation as a consequence of Defendant's conduct—, Plaintiffs have likewise plead sufficient facts. Specifically, Plaintiffs have alleged that persistent, debilitating harassment and an incident of physical violence were enabled by Defendant's indifference, starkly depicted in the allegation that Freemen's supervisor advised her to "f—k him and just get it over with." These are facts which, if proven, could support a finding that Defendant should reasonably have foreseen Freemen's resignation.

As a result, the Court finds that Plaintiffs' respective Complaints were sufficient to put Defendant on notice of a claim for constructive discharge. Consequently, Plaintiffs were entitled to submit proof of constructive discharge at trial, and their claims for lost pay damages are not barred.

### 2. *Termination of Charlie Fisher*

██ Defendant argues that the Court should not consider evidence regarding Whirlpool's termination of Freemen's supervisor, Charlie Fisher ("Fisher"), in conjunction with its decision in this case. Defendant argues that this evidence is irrelevant under Federal Rule of Evidence 401, and that the Court should decline to consider it given the Court's discretion under Federal Rule of Evidence 608(b).

The evidence relating to Fisher's termination is as follows: on July 30, 2004, Whirlpool terminated Fisher for failure to adhere to supervisor protocol. More specifically, Fisher was terminated on the basis of a Whirlpool investigation, which found that Fisher: (1) submitted inaccurate production counts and (2) circumvented quality and safety procedures. (Doc. No. 107 at 2). Fisher's termination occurred approximately three months after Freemen stopped working at Whirlpool, but according to Whirlpool's investigation of Fisher, the conduct for which Fisher was terminated was ongoing during the period of Freemen's employment with Whirlpool from January to March of 2004. (Contreras Dep. 42:16–45:3).

Rule of Evidence 608(b) states that:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness ... may, ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness.

Under Rule of Evidence 607,

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evi-

dence may refer only to character for truthfulness or untruthfulness. . . .

It is thus indisputable that Plaintiffs are entitled to attack Fisher's credibility on the stand, regardless of whether Plaintiffs or Defendant call him. Furthermore, it is within the Court's discretion to determine the admissibility of evidence pertaining to Fisher's termination.

Defendant argues that this Court should bar evidence of Fisher's termination because the circumstances of Fisher's termination are disputed, such that any evidence pertaining to his termination would be more prejudicial than probative, would result in jury confusion, and would cause undue delay.

The Court disagrees. What is undisputed is that Whirlpool terminated Fisher because it was convinced that Fisher had engaged in a pattern of behavior that was untruthful and in violation of Whirlpool's standards for quality and safety. At issue in the present case is whether Freemen reported alleged instances of racial and sexual harassment to Fisher, and if so, what Fisher did about it. There is competing testimony on this point—Fisher denied knowledge of racial or sexual harassment, and asserted that he took appropriate measures to combat Freemen's complaints. Fisher's credibility is thus paramount. That Fisher has a track record—*generated by Defendant*—of self-serving dishonesty, coupled with reckless disregard for safety protocol, is both relevant and highly probative to the Court's resolution of this case. Accordingly, the Court will consider any evidence pertinent to Whirlpool's termination of Fisher as elicited in the course of Fisher's testimony at trial.

### 3. *Other Discrimination and/or Harassment Complaints*

Defendant requests that this Court bar Plaintiffs "from offering evidence concerning an unverified harassment complaint against Willie Baker ("Baker") and evidence of other internal or external discrimination and/or harassment complaints by other Whirlpool employees." (Doc. No. 111 at 1). No evidence has been submitted concerning either discrimination or harassment complaints against anyone other than Baker. As a result, Defendant's argument with respect to such evidence is moot.

■ The remaining issue is whether the Court may properly consider evidence that Whirlpool received complaints about Baker engaging in discriminatory or harassing behavior towards persons other than Freemen. Defendant argues that the Court may not consider such evidence because (1) it is not relevant under Federal Rule of Evidence 401 and so must be excluded under Rule 402; (2) it is more prejudicial than probative under Federal Rule of Evidence 403; and (3) it is prohibited by Federal Rule of Evidence 404(a) as character evidence designed to "prov[e] action in conformity therewith on a particular occasion." (Doc. No. 111 at 3–5).

The Court is in agreement with Defendant that evidence of complaints that Baker harassed and/or discriminated against others is not admissible to prove that Baker harassed and discriminated against Freemen. That complaints of Baker's conduct towards others were filed with Whirlpool is likely more prejudicial than probative under Rule 402, barring evidence attesting to the veracity of these prior complaints.

However, the Court views this same evidence differently with respect to its admission to prove (1) that Defendant knew or should have known that Baker engaged in discrimination and harassment towards Freemen, and (2) that Defendant took appropriate steps to protect against a hostile work environment. When offered in this manner, the disputed evidence is clearly relevant and more probative than prejudi-

cial: if Defendant was aware that employees were complaining about harassment and discrimination by Baker—whether or not such complaints were valid—, then Defendant should reasonably have been alerted to the fact that Baker was a potential problem. This awareness, in turn, would reasonably have colored Defendant's response to subsequent complaints about Baker, prompting a more immediate and serious response to such complaints, whether the appropriate response be investigation or some remedial action. Because resolution of this case turns in large part on what Freemen reported to Defendant and what Defendant did in response, the contested evidence is relevant and probative.

In *Yates,* the Sixth Circuit considered the sexual harassment claims of two women against an Avco Corporation ("Avco") supervisor and cited as particularly probative the fact that Avco had received sexual harassment complaints against the supervisor in question dating back a number of years. 819 F.2d at 635–36. Specifically, the Court of Appeals found evidence of prior complaints to suggest: (1) that Avco should have known of the supervisor's harassment of plaintiffs at an earlier date and (2) that Avco was not properly addressing instances of sexual harassment. *Id.*

For these reasons, the Court will consider any evidence that Defendant received complaints of Baker's discriminatory or harassing behavior.

### 4. Criminal Conviction of Willie Baker

█ On cross-examination of Baker by Plaintiff EEOC, Baker admitted that he was criminally convicted for assaulting Freemen, and that as a result of that conviction he was ordered to undergo psychiatric evaluation where he was diagnosed as suffering from paranoia. (Tr. 545–45). Defendant objected to questioning related to Baker's criminal conviction on grounds

of relevance, and the Court overruled the objection. (Tr. 545). Defendant renews its objection that Baker's testimony on this subject was irrelevant and should not properly be considered by the Court under Federal Rules of Evidence 401 and 402.

The Court disagrees. While it is undisputed that Baker struck Freemen, the reason for this assault is hotly contested. Baker has consistently maintained that the assault was an act of self-defense triggered by Baker's discovery that Freemen was carrying a gun and intended to harm him. To the extent that Defendant advances this explanation for the assault as a defense against Plaintiffs' allegations that the attack was motivated by racial or sexual animus, Baker's conviction is relevant and probative. Baker's conviction signifies that a state criminal court found Baker's self-defense claim unavailing beyond a reasonable doubt. Moreover, Baker's sentencing in that matter suggests that the state criminal court considered Baker's mental health to be at issue, an inference that later psychiatric evaluation and diagnosis supported. Furthermore, evidence of Baker's criminal conviction is not prejudicial to Defendant. For these reasons, the Court will consider evidence of Baker's criminal conviction in the course of its decision in this action.

### 5. Statements Baker Allegedly Made Outside of Freemen's Presence

█ Defendant argues that the Court should not consider evidence of racially or sexually discriminatory statements that Baker allegedly made outside of Freemen's presence. In particular, Defendant asks this Court to disregard the testimony of Kim Wheeler ("Wheeler"), who claimed that she heard Baker refer to his black coworkers as "these motherfucking niggers." According to Defendant, this evidence is inadmissible under Federal Rules of Evidence 401, 402, 404(a), and 608.

■ The Court finds that evidence of Baker's behavior outside of Freemen's presence is admissible. In Title VII actions, the Sixth Circuit has recognized that evidence of discrimination not experienced by the plaintiff is probative of a hostile work environment and therefore admissible, Rule 404(a) not withstanding. *Robinson v. Runyon,* 149 F.3d 507, 512 (6th Cir.1998) (citing *Polanco v. City of Austin, Texas,* 78 F.3d 968, 980 (5th Cir.1996); *Estes v. Dick Smith, Ford Inc.,* 856 F.2d 1097, 1103 (8th Cir.1988); *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir.1987)). In some circumstances, appellate courts have recognized such evidence as fitting within either the "motive" or "intent" exception of Federal Rule of Evidence 404(b). *See, e.g., Cariglia v. Hertz Equip. Rental Corp.,* 363 F.3d 77, 84 (1st Cir.2004); *Heyne v. Caruso,* 69 F.3d 1475, 1480 (9th Cir.1995). But whatever the specific legal justification, it is clear that, in light of the difficulties of proving discrimination and the importance of Title VII actions, courts may generally consider probative evidence of hostile work place discrimination wherever they find it.

In the present case, the fact that Wheeler reported hearing Baker make racially discriminatory remarks is potentially probative. Such testimony, if found credible, may speak to the presence of a hostile work environment, particularly if it is proven that Defendant knew or should have known that Baker made such statements. However, the Court notes that this evidence will not be considered with respect to Baker's motivation in assaulting Freemen. To consider the evidence in this light would run squarely against the prohibitions of Federal Rules of Evidence 404(a) and 608. *See Becker v. ARCO Chem. Co.,* 207 F.3d 176, 194 n. 8 (3d Cir.2000) (acknowledging admissibility of evidence of work place discrimination not experienced by plaintiff to establish hostile work environment, but refusing to permit such evidence as proof of discriminatory nature of particular act).

**B. Defendant's Motion to Strike the Testimony and Report of Dr. Mark Cohen**

Defendant argues that the Court should strike the testimony and report of Plaintiffs' economics expert Dr. Mark Cohen ("Cohen") on two grounds: (1) Dr. Cohen's report ("Report") was incomplete under Federal Rule of Civil Procedure 26(a)(2)(B); and (2) Dr. Cohen's testimony and Report were unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. The Court considers each of these arguments in turn.

*1. Rule 26(a)(2)(B)*

As pertinent to the present issue, Federal Rule of Civil Procedure 26(a) states:

**(2) Disclosure of Expert Testimony**

**(B)** *Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

. . . .

(ii) the data or other information considered by the witness in forming them;

Fed.R.Civ.P. 26(a)(2)(B)(ii).

Defendant contends that the Report is deficient under Rule 26(a)(2)(B)(ii) in two respects. Defendant's first alleged deficiency refers to a discrepancy between Dr. Cohen's Report and his trial testimony. In his testimony, Dr. Cohen referred to an

article he found on the Internet that discussed the robust nature of the labor market in Rutherford County, where Freemen lived and worked. (Tr. 466–68). On the basis of this article, Dr. Cohen testified that the closing of the Whirlpool Factory where Freemen worked would not adversely impact her future earnings potential. However, no reference to this article was included in Dr. Cohen's Report.

Defendant's second alleged deficiency refers to a different discontinuity between Dr. Cohen's Report and his testimony. Dr. Cohen's Report lists the age of 67 as the upper limit for Freemen's prospective work life. In the Report, no basis is given for this upper boundary other than that 67 is the age of Social Security retirement. At trial, however, the Court asked Dr. Cohen whether he had any opinion as to when specifically Freemen was likely to have stopped working along the work life spectrum he provided, from age 58 to 67. Dr. Cohen responded that there was a substantial likelihood that Freemen would retire towards the upper boundary, given the fact that she had neither a second source of income through a working husband, nor any significant savings. These factors the absence of a husband or significant savings—were not cited in Dr. Cohen's Report.

The Court makes no finding here as to whether the first alleged deficiencies represent an actual violation of Rule 26(a). This is for the reason that, even assuming violation of Rule 26(a) *arguendo*, the first alleged deficiency does not warrant remedy under Federal Rule of Civil Procedure 37. Rule 37 states, in pertinent part:

 **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit**

 **(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED.R.CIV.P.R. 37(c)(1). Rule 37 thus clearly states that no remedy is appropriate for a harmless violation of Rule 26(a). *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir.2003).

■ In the present case, both of the deficiencies alleged by Defendant represent, at worst, instances of harmless error. Dr. Cohen's deposition remedied any failures to disclose within the Report. As a preliminary matter, the Court notes that ordinarily, it is improper to consider deposition disclosures as curative of deficiencies in an expert's written report. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir.2008). This is for the reason that "[a]llowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): 'to shorten or decrease the need for expert depositions.'" *Id.* (internal citations omitted). But in the present case, Defendant's submitted their Motion to Strike Expert Report and Testimony after Dr. Cohen's deposition, arguing that Defendant suffered prejudice in its inability to prepare for cross-examination at trial. (Doc. No. 182 at 4). Accordingly, the Rule 26(a)(2) purpose of reducing the need or length of expert depositions is moot in this case. The relevant purpose of Rule 26(a)(2) is thus notice to Defendant pending trial, and under these circumstances, the Court finds that deposition disclosure may be curative. *See Muldrow ex rel. Muldrow v. Re–Direct, Inc.*, 493 F.3d 160, 167 (D.C.Cir.2007).

■ Defendant's first alleged deficiency was cured at Dr. Cohen's deposition because the article he found on the Internet describing the Rutherford County labor market was made an Exhibit to Dr.

Cohen's deposition. (Cohen Depo. 65:12–14, Sept. 9, 2008). Defendant thus had from September 9, 2008, until February 26, 2009, to prepare to cross-examine Dr. Cohen on the issue of the Rutherford County labor market. Under these circumstances, the Court finds that Defendant suffered no prejudice from the absence of the article in Dr. Cohen's Report, and therefore any violation of Rule 26(a) with respect to this alleged deficiency is harmless.

 Defendant's second alleged deficiency is no deficiency at all. In *Thompson v. Doane Pet Care Co.*, the Sixth Circuit held that, "Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." 470 F.3d 1201, 1203 (6th Cir.2006). In the present case, Dr. Cohen's discussion of the fact that Freemen is single and without substantial savings was the sort of elaboration at trial that *Thompson* expressly removes from the scope of Rule 26(a). Dr. Cohen's Report, deposition, and trial testimony list age 67 as the upper boundary for Freemen's work life, citing as justification that 67 is the age of retirement for Social Security purposes. It was only when the Court questioned Dr. Cohen at trial as to when precisely Freemen would have retired that Dr. Cohen mentioned the considerations of Freemen's marital status and savings. (Tr. 452). The Court thus specifically requested a probability opinion at trial that was not included in Dr. Cohen's report, and it was in response to this request that Dr. Cohen voiced the factors on which Defendant now bases its challenge. Defendant's challenge is therefore without merit. Under *Thompson*, Dr. Cohen was not required to include within his report the basis for opinions which he might discuss for the first time in response to the Court's questioning at trial.

### 2. Daubert

 Defendant argues that the Court should strike the testimony and Report of Dr. Cohen as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* established a new criteria for courts to use in determining the reliability of expert testimony. Whereas previously, courts were to be guided by the singular question of whether an expert's theory was "generally accepted," *Daubert* emphasized a "flexible" approach under which courts would consider, in addition to (1) general acceptance, factors such as (2) whether the theory had been tested, (3) whether it had been subjected to peer review and publication, and (4) the known error rate of the theory. 509 U.S. at 592–95, 113 S.Ct. 2786. The *Daubert* factors are not exhaustive of the reliability determination, and no one is individually binding. *Davison v. Cole Sewell Corp.*, 231 Fed.Appx. 444, 448 (6th Cir. 2007); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir.2006). District Courts have considerable discretion in determining the reliability of an expert's testimony under *Daubert*. *Davison*, 231 Fed.Appx. at 448.

Defendant contends that Dr. Cohen's Report and testimony must be considered unreliable in light of four elements: (1) Dr. Cohen's methodology in selecting the upper boundary for Freemen's work life at 67; (2) Dr. Cohen's decision that the closing of the Lavergne, Tennessee, Whirlpool Facility would not have adversely effected Freemen's future earnings; (3) Dr. Cohen's use of "benefit cost" as opposed to "benefit value"; and (4) Dr. Cohen's basis for application of medical costs. The

Court considers each of these elements in turn.

### (A) The Upper Boundary of 67

■■■ Defendant argues that Dr. Cohen had no reliable basis for selecting the upper boundary to Freemen's work life at age 67. According to Defendant, the only reasons given in support of this decision were Freemen's lack of savings and marital status, which, as discussed above, were not contained in Dr. Cohen's report. Moreover, Defendant argues that Dr. Cohen's selection of age 67 does not satisfy any of the *Daubert* factors.

Dr. Cohen's testimony and Report make clear that Dr. Cohen selected the low end of his projected work life for Freemen (58) on the basis of data within a published article: Skoog and Ciecka, *The Markov (Increment Decrement) Model of Labor Force Activity: Extended Tables of Central Tendency, Variation, and Probability Intervals,* JOURNAL OF LABOR ECONOMICS, Vol. 11, No. 1, Spring/Summer 2001. (Tr. 440–42). Dr. Cohen testified that this article was widely considered the best source of data for work life expectancy in the field of labor economics, but that it is known to project probabilities on the basis of historical data. (Tr. 440). In particular, Dr. Cohen noted that the projected work life expectancies for women are based on data from women who worked in the 1960's and 1970's. (Tr. 440–452). Dr. Cohen testified that women are generally acknowledged to work longer now than in previous eras, and on this basis, Dr. Cohen concluded that the article's projected retirement date for Freemen was highly conservative and thus should be considered the bottom of a range. (*Id.*). For the top of the range, Dr. Cohen selected the age of Social Security retirement, 67, which he stated he considered to be a reasonable upper boundary on the basis of his own experience and expertise. (*Id.*).

It was clear from Dr. Cohen's testimony that there is a dearth of published material based on contemporary data with respect to the work life of women. Dr. Cohen testified that the article he used to identify a lower boundary was the best research available, but that it was still unsatisfactory because it was based on historical data. Accordingly, the Court finds that the *Daubert* factors are not helpful here. A theory about which little has been published cannot have been tested, subjected to peer review or publication, or analyzed with respect to error rate. However, the Court notes that Dr. Cohen testified to the dearth of available research, and to the phenomenon of women working longer in today's society, as generally accepted in the labor economics community. Moreover, the Court notes that Dr. Cohen is highly qualified to make hypotheses as to work life expectancy on the basis of his considerable experience and expertise. The record is clear that Dr. Cohen has worked in the field of labor economics for over twenty years as a scholar, professor, and private consultant. In the course of his work for bodies such as the United States Sentencing Commission, he has always employed the methodology which he used in the present case. (Tr. 422). On this basis, given that the *Daubert* factors are not entirely applicable to the issue in question, the Court considers Dr. Cohen's selection of 67 as an upper boundary for Freemen's work life expectancy to be reliable.

### (B) The Closing of Whirlpool's Lavergne, Tennessee, Factory

■■■ Defendant argues that Dr. Cohen had no reliable basis for concluding that the closing of Whirlpool's Lavergne facility would not have negatively impacted Freemen's future earnings. The evidence is to the contrary: Dr. Cohen reached this conclusion on the basis of a published article,

as discussed above. What Defendant's argument amounts to is a dispute as to Dr. Cohen's conclusion. That is not a threshold reliability issue, but a question more properly considered in the Court's disposition of the underlying Title VII action.

### (C) Use of Benefit Cost

■ Defendant argues that Dr. Cohen erred as a matter of law by including within his damages calculation an award for lost benefits based on the amount that Defendant would have paid over the course of Freemen's projected work life, rather than the value of benefits that Freemen would likely have received. Defendant cites *Sweeney v. American Steamship Co.*, 491 F.2d 1085, 1090 (6th Cir.1974), for the proposition that awards of damages for lost benefits must be calculated on the basis of what the employee would have earned, not what the employer would have paid.

The Court assets no conclusion here as to whether Dr. Cohen's calculation of lost benefits was legal error. For present purposes, the Court finds that Defendant's argument on this issue suggests reason for the Court to disregard Dr. Cohen's lost benefit estimates in any ultimate award of damages; however, Defendant's argument is not sufficient to undermine the reliability of Dr. Cohen's testimony and Report on the whole, in light of the scope of Dr. Cohen's other conclusions and the reliability manifested in Dr. Cohen's considerable experience and expertise.

### (D) Calculation of Medical Costs

■ Lastly, Defendant urges that Dr. Cohen's conclusion as to total damages incorporates medical costs that are unfounded. Specifically, Dr. Cohen found that Freemen would likely require seven medical office visits per year, medical testing, and prescription costs for the remainder of her life. Defendant concedes that Dr. Cohen based his medical cost conclu-sions by projecting Freemen's past medical treatment into the future. However, Defendant argues that Dr. Cohen lacks knowledge of the substance and justification for these prior treatments, and therefore has no basis on which to conclude that projection into the future is justified. This argument is without merit. Dr. Cohen testified that his medical cost conclusions were based on the treatment records of Freemen's treating physicians. (Tr. 464). Dr. Cohen could not recall at the time of trial what treatments Freemen had received in the years prior to Dr. Cohen's analysis, but he testified that he was in possession of this information when he compiled his Report. (*Id.*). Furthermore, Dr. Cohen stated that he relied on the prognoses of Freemen's treating physicians in determining the likelihood of future medical expenses. (*Id.*). Under these circumstances, the Court finds no reliability issue in Dr. Cohen's calculation of damages based on future medical costs.

For the above reasons, the Court finds no basis on which to conclude that Dr. Cohen's testimony and Report are unreliable. Accordingly, Defendant's Motion to Strike Expert Testimony is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, Defendant's Motions to Strike Other Evidence (Doc. No. 183) and to Strike Expert Testimony (Doc. No. 182) are both **DENIED.**

It is so ORDERED.